IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Ceferina G. Hess, ) | |
| ) | Civil Action No. 8:04-1474-GRA-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Lander University, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion to dismiss and for summary judgment. In an amended complaint filed September 3, 2004, the *pro se* plaintiff asserted ten causes of action against the defendants regarding her employment as a professor at Lander University ("Lander") and her discharge from Lander.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The defendants filed a motion to dismiss and for summary judgment on June 10, 2005. By order filed on June 14, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if she failed to adequately respond to the motion. The plaintiff filed a response to the defendants' motion on August 1, 2005. The defendants filed a reply brief on August 10, 2005, and the plaintiff filed an amended response to the motion on August 15, 2005. She filed a sur-reply to the defendants' reply brief on September 12, 2005.

## **FACTS PRESENTED**

The plaintiff taught political science at Lander University from 1975 until 2002. In 1990, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she was denied promotion to the rank of full professor by Lander's then-President Larry Jackson. She further alleged that she was discriminated against with respect to her salary because of her national origin (native-born Filipino) and her gender. After exhausting the EEOC process, the plaintiff brought a lawsuit in federal court, which was tried before this court in 1993. This court entered judgment in favor of Lander, and the Fourth Circuit Court of Appeals affirmed. The Supreme Court then dismissed the plaintiff's petition for writ of certiorari (pl. dep., ex. 1).

On April 30, 2002, the plaintiff, who was at that time a tenured associate professor at Lander, received a second consecutive annual review with an overall rating of unsatisfactory (Daniel Ball dep., def. ex. 3, ex. 23, 31). Her teaching effectiveness had previously been rated "marginally satisfactory" in 1996-97 by then-chair Dr. Robert Figueira and "unsatisfactory" in 1999-2000 by Dr. Tim Snyder (Ball dep., def. ex. 3, ex. 18, 47). The *Faculty Handbook* at Lander states, and Dr. Daniel W. Ball, Lander's President, confirmed, that "the chief duty of each faculty member is to teach effectively the subject matter of the courses which he/she is assigned" (Ball dep. 197, pl. ex. 1, § I, p. 6]. The *Faculty Handbook* further provides that a faculty member's receipt of an overall rating of "unsatisfactory" on an annual review followed by failure "to make the required progress toward satisfactory performance may result in initiating the termination process as outlined in Section IV. C. 5 of the *Faculty Handbook*" (Ball dep., pl. ex. 1, § IV, p. 18). The referenced section IV.C.5 of the *Faculty Handbook* provides that a tenured faculty member may be terminated for "cause" which is defined to "include but not ... limited to" specified grounds including "incompetence" and "neglect of duty," among others (Ball dep., pl. ex. 1, § IV, p. 11).

Also during 2000 and 2001, Dr. Friederike Wiedemann, Lander's Vice President for Academic Affairs, had repeated discussions with the plaintiff about her allegedly unprofessional conduct both inside and outside the classroom (Ball dep. 234-81, def. ex. 2, ex. 21, 31, 40-44). On May 3, 2002, Dr. Ball advised the plaintiff that he intended to dismiss her from the faculty for unsatisfactory performance and unprofessional behavior unless she chose to resign or retire (pl. dep., ex. 4). The plaintiff responded on May 3, 2002, demanding that Dr. Ball specify her unprofessional behavior (pl. dep., ex. 5). Dr. Ball replied on May 6, 2002, with the requested detail and further advised Hess that, effective immediately, she was suspended from all faculty duties pending her dismissal (pl. dep., ex. 6). The suspension was with pay. The *Faculty Handbook* gives the President the authority to dismiss faculty members subject to the faculty member's right to contest her dismissal in a trial-type hearing before the Academic Freedom, Grievance and Due Process Committee (hereafter referred to as the Faculty Grievance Committee), a committee appointed by the Faculty Senate, and an appeal to the Lander Board of Trustees, which is confined to the record made before the Faculty Grievance Committee (Ball dep. 195, pl. ex. 1, § II, pp. 9-11 and § IV, pp. 11-12).

On September 27, 2002, the Faculty Grievance Committee convened and held an all-day hearing on the plaintiff's challenge to her dismissal. Eleven witnesses testified under oath and were cross-examined, 55 exhibits were offered into evidence, and the proceedings were transcribed by a court reporter who was present throughout the hearing (def. m.s.j., ex. 2, 3). On October 15, 2002, the Faculty Grievance Committee issued its report and recommendation to Dr. Ball. The Committee unanimously found that the preponderance of evidence adduced at the hearing supported the charges that the plaintiff's teaching was ineffective, that she had engaged in unprofessional behavior, and that she had been insubordinate in failing to heed directives issued to her by both Dr. Wiedemann and her division chairs. The Committee further found that the plaintiff's

3

allegations of a far-flung conspiracy among Lander administrators, faculty, staff and students was unsubstantiated by any evidence, was defamatory and was itself evidence of unprofessional conduct (pl. dep., ex. 8). The Committee concluded that dismissal was warranted and so recommended to Dr. Ball. On July 17, 2002, Dr. Ball notified the plaintiff that he had accepted the Faculty Grievance Committee's recommendation, that she had the right to appeal to the Board of Trustees within 30 days, and that her pay status would continue until the latter of the expiration of 30 days or the date the Board acted on her appeal (pl. dep., ex. 9).

The plaintiff then appealed to the Board of Trustees (pl. dep., ex. 10). The record was thereafter transmitted to the Board for its consideration (pl. dep., ex. 11). On December 13, 2002, a committee of the Board appointed by the Board chair heard oral argument on the plaintiff's appeal (pl. dep., ex. 15). After that hearing, the committee unanimously recommended to the full Board that the plaintiff's dismissal be upheld and her appeal denied. The full Board accepted that recommendation and voted to deny the plaintiff's appeal. The plaintiff was notified of the Board's action on December 16, 2002 (pl. dep., ex. 16).

On June 6, 2003, Hess filed a charge of discrimination alleging that she was dismissed from the faculty because of her national origin and in retaliation for her 1990 charge of discrimination that led to the 1993 trial before this court. She also alleged that she was discriminated against with respect to her salary because of her national origin and her previous *(i.e.,* 1990) charge (pl. dep., ex. 17). The plaintiff filed this action on May 11, 2004. Prior to service of the summons and complaint, she sought and was granted leave to file an amended complaint which was first served on the defendants in September of 2004.

In her amended complaint, the plaintiff alleges federal claims for hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, and

4

violation of her First Amendment rights. She also alleges state law claims for defamation, wrongful suspension, breach of contract, wrongful discharge, civil conspiracy, retaliatory discharge, "neglect of public responsibility," and obstruction of justice. The defendants are as follows: Dr. Daniel Ball, Lander's President; Dr. Larry Jackson, Lander's President Emeritus; Dr. Friederike Wiedemann, Lander's Vice-President for Academic Affairs; Drs. Tim Snyder and Bill Martin, who served as the plaintiff's division heads during academic years 1999-2000 and 2000-01 (Snyder) and 2001-02 (Martin); Susan Goings, Chair of Lander's Faculty Senate during academic year 2001-02; Dr. Aaron Tannenbaum, Professor of Political Science at Lander; and 17 members of Lander's Board of Trustees at the time of the plaintiff's discharge.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has

been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

**ANALYSIS**

*Title VII*

In her eighth cause of action, the plaintiff alleges a claim for hostile work environment. She references Title VII in the amended civil cover sheet that she attached to her amended complaint; accordingly, it appears to this court that she intends to pursue her claim under Title VII. As noted by the defendants, a Title VII claim can be asserted only against an employer and cannot be asserted against individuals. *See Lissau v. Southern Food Services, Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998). Therefore, the claim can be maintained only against Lander.

The defendants argue that the Title VII claim for hostile work environment against Lander fails because it was not exhausted in the charge of discrimination that the plaintiff filed with the EEOC on June 6, 2003. In her EEOC charge, the plaintiff alleged two claims: (1) that she was denied equal pay because she "filed a discrimination complaint alleging unequal treatment because of my National Origin" and (2) that she was terminated from employment for "pretextual" reasons when the real reason was her national origin and the filing of her previous complaint of discrimination (pl. dep., ex. 17). In her description of why she felt she was denied equal pay, the plaintiff alleged: "I was the only Filipino-American in the entire university and have been subjected to hostile treatment during my tenure." *Id.* The defendants argue the "casual reference" to hostile treatment is insufficient to constitute exhaustion of a claim of hostile work environment (def. m.s.j. 33-34). However, for purposes of this motion only, the court will assume that this reference to hostile work environment was sufficient and the claim has been exhausted.

The defendants next argue that even if the claim is exhausted, it is still untimely. This court agrees. The plaintiff was suspended from all faculty duties and

notified of Dr. Ball's intent to dismiss her on May 6, 2002[1] (pl. dep., ex. 6). She had no contact with any of the non-Board member defendants, the defendants who allegedly created her hostile work environment, after May 6, 2002 (pl. dep. 29-31). Title VII requires that individuals complaining of discrimination file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C. §2000e-5(e)(1). However, because South Carolina is a deferral state, charging parties are afforded the more liberal 300-day deadline to file with the South Carolina Human Affairs Commission. *Id.* The plaintiffs are generally time-barred from recovering for any discrete act of discrimination occurring prior to the 300-day deadline. *National Railroad Passenger Cor. v. Morgan,* 536 U.S. 101 (2002) ("*Morgan*").

The United States Supreme Court has distinguished hostile work environment claims from discrete acts of discrimination for purposes of determining statutory period. In *Morgan*, the Court held that:

> [T]he statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period . . . [but] consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory period.

*Id.* at 105. When addressing discrete acts of discrimination, the Court stated:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred.

*Id.* at 113.

---

[1] As noted above, in a letter dated May 3, 2002, Dr. Ball informed the plaintiff of his intent to initiate formal dismissal proceedings for cause against her because of her unsatisfactory performance evaluations and unprofessional behavior. She was notified that she could choose to resign or retire (pl. dep., ex. 4). The letter dated May 6, 2002, provided more detail and stated that the plaintiff was "suspended from all faculty responsibilities . . . effective immediately" (pl. dep., ex. 6).

In this case, any hostile work environment claim that the plaintiff had accrued not later than May 6, 2002. No act contributing to the alleged hostile environment took place within the statutory period. The fact that the plaintiff challenged her dismissal before the Faculty Grievance Committee and appealed to the Board of Trustees, which resulted in her final paid date of employment being December 13, 2002, does not operate to extend the limitations period because these proceedings were not part of any alleged "hostile work environment." *See Wallin v. THC-Chicago, Inc.*, No. 99C3173, 2004 WL 2535283, *7 (N.D. Ill. 2004) (holding that fact that plaintiff was fired within 300-day period preceding her filing of charge could not be used to render timely otherwise time-barred claim of hostile work environment where firing was disparate act and not part of alleged hostile work environment). Based upon the foregoing, the plaintiff's hostile work environment claim is time-barred and should be dismissed.

Even if the claim was timely, the plaintiff cannot establish that the alleged conduct was based upon her national origin and/or retaliation for her prior claim of discrimination. In her response to the motion for summary judgment, the plaintiff discusses various incidents dating back to 1979 (pl. am. resp. 34-39). However, she comes forward with no evidence that the alleged conduct was based upon her national origin and/or retaliation for her prior claim of discrimination. Furthermore, the plaintiff has not shown that the conduct was so severe or pervasive that it altered the conditions of her employment and created a hostile work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993). Based upon the foregoing, the plaintiff's Title VII hostile work environment claim fails.

The plaintiff argues that her hostile work environment claim is brought pursuant to Title 42, United States Code, Section 1981, rather than Title VII, and thus she is not required to exhaust administrative remedies as a prerequisite to a judicial claim for

relief. However, as argued by the defendants (def. reply 10), Section 1981[2] does not prohibit discrimination on the basis of national origin or gender. *Schilling v. Rutherford Pediatrics, P.A.*, 346 F. Supp.2d 828, 836 (W.D. N.C. 2004). Further, as noted above, the plaintiff has come forward with no evidence connecting the hostile work environment she alleges to her national origin and/or her previous Title VII lawsuit.

The plaintiff also alleged in her EEOC charge that she was terminated from employment based upon her national origin and/or in retaliation for her previous Title VII lawsuit. The plaintiff did not specifically plead such a claim in her amended complaint. However, even if a claim for discriminatory and/or retaliatory discharge under Title VII had been properly pled, it would fail.

The defendants argue that the plaintiff's charge of discrimination was untimely, and therefore any discrimination/retaliation claim is barred. As noted above, the plaintiff was notified on May 6, 2002, by Dr. Ball that he intended to dismiss her as a faculty member because of her second consecutive overall unsatisfactory review and her unprofessional conduct (pl. dep., ex. 6). The plaintiff testified in her deposition that she understood that the May 6th letter meant that she would be terminated and that Dr. Ball would not change his mind. She further testified that she believed the notice of dismissal was discriminatory (pl. dep. 63-66). The Fourth Circuit Court of Appeals has held that the limitations period begins to run from the earlier of "the time of discharge or . . . the moment the employee received advance notice of the pending discharge." *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88 (4th Cir. 1990) (en banc). The United States Supreme Court has held that where an employee is given advance notice that he will be discharged, his time for filing a discriminatory discharge begins to run from the date he received such notice, not from his

---

[2]Title 42, United States Code, Section 1981, provides in pertinent part: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."

10

final date of employment. *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981). As the Court explained in *Chardon*, "[I]n *[Delaware State College v. Ricks*, 449 U.S. 250 (1980)]* we held that the proper focus is on the *discriminatory act,* not the point at which the *consequences* of the act become painful. The fact of termination is not itself an illegal act." *Id.* at 8 (emphasis in original). The plaintiff filed her charge of discrimination on June 6, 2003 – over a year after she was notified of Dr. Ball's intent to initiate dismissal proceedings. Accordingly, the filing of the charge exceeded the 300-day limitations period.

Even if the charge was timely, the plaintiff's claim would fail. She admitted in her deposition that she had no direct evidence that the decision to dismiss her was motivated by her national origin and/or her prior complaint of discrimination (pl. dep. 44-47, 64-66). Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), the allocation of proof is as follows: (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant-employer to articulate a legitimate non-discriminatory reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802-03).

To establish a *prima facie* case of discriminatory discharge, a plaintiff must show:

> (1) that [s]he is a member of a protected class; (2) that [s]he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action [s]he was performing at a level that met h[er] employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class.

11

*King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir.1999)).  As argued by the defendants, the plaintiff cannot prove a *prima facie* case of discriminatory discharge because she cannot show that her performance at the time of her discharge was satisfactory.  The overwhelming evidence shows that Dr. Ball discharged the plaintiff because her overall performance remained unsatisfactory over two successive years and he believed she engaged in unprofessional conduct, including a failure to heed instructions of her supervisor (pl. dep., ex. 4, 6; Ball dep. 12-14, 211-15, 217-18).

In order to establish a *prima facie* case of retaliation, the plaintiff must show that "'(1) she engaged in a protected activity; (2) the employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action.'" *Matvia v. Bald Head Island Mgmnt.*, *Inc.,* 259 F.3d 261, 271 (4th Cir. 2001) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)).  The plaintiff has not shown a causal connection between her prior lawsuit and her termination from employment.

Even if the plaintiff could establish *prima facie* cases of discrimination and/or retaliation, she cannot carry her burden with regard to showing pretext.  When asked in her deposition what led her to believe she was terminated because she was a Filipino-American, the plaintiff responded, "I'm the only native born Filipino in the faculty for all the 27 years that I had been here and even before" (pl. dep. 44).  This, without more, is insufficient to survive summary judgment.  Further, the plaintiff conceded in her deposition that she is not aware of any other faculty member who received successive overall unsatisfactory reviews and who would thus be similarly situated to her (pl. dep. 64-66). The plaintiff also testified that she believes the "real" reason that Dr. Ball dismissed her is because he had to choose between keeping his job or firing her, and he opted to keep his

job (pl. dep. 66-70). Based upon the foregoing, any claim of discriminatory/retaliatory discharge fails.

### *Obstruction of Justice*

In her ninth cause of action, the plaintiff asserts a claim for obstruction of justice. This claim fails because there is no civil claim for obstruction of justice under federal law, and there is no South Carolina appellate case law recognizing such a claim. *See, e.g.*, *Scherer v. United States*, 241 F.Supp.2d 1270, 1282 (D. Kan. 2003) ("Federal courts have consistently denied a private civil cause of action under . . . the criminal statute against . . . obstruction of justice."); *Culberson v. Doan*, 125 F.Supp.2d 252, 279 (S.D. Ohio 2001) (no civil claim for obstruction of justice available under federal or state law). Accordingly, this claim should be dismissed.

### *First Amendment*

In her tenth cause of action, the plaintiff alleges that she was discharged from employment in retaliation for her exercise of her right of free speech under the First Amendment to the United States Constitution. In that cause of action, the plaintiff contends:

> 85. On January 17, 2001, Defendant Wiedemann wrote a letter to the Plaintiff falsely charging her with rumor mongering a married colleague's adulterous affair with a recently graduated alumna mother.
>
> 86. On June 18, 2002, and again on August 8, 2002, defendant President Ball charged her with making undesignated derogatory remarks on campus, a charge he eventually used on August 8, 2002, to remove all her faculty privileges, including free accessibility to her campus office of 20 years (1982-2002).
>
> 87. On August 2, 2002, the Plaintiff wrote Defendant President Ball requesting his permission to speak to faculty

>peers on August 16, 2002, regarding her suspension by him on May 6, 2002, and this request was rejected.
>
>88.     Between December 20, 2002, and February 7, 200[3], the Plaintiff requested that Lander University publicize her termination, but Defendant President Ball refused to do so. Included in those letters was also Plaintiff's request for severance pay which he also refused to respond.
>
>89.     Between April 7, 2004, and April 9, 2004, Plaintiff Hess hand-delivered 140 envelopes of information to the various departments of Lander University regarding her suspension and termination. Some of these envelopes were intercepted by Defendant Ball's request, and as of September 1, 2004, she has yet to account for all of them. None of the listed defendants . . . in this law suit have ever denied any of the allegations found in those particular envelopes.

(Am. comp. ¶¶ 85-89).

In order to state a claim under the First Amendment for retaliatory discharge, a public employee must prove that: (1) the employee spoke on a matter of public concern; (2) the employee's interest in speaking on the matter outweighs the government's interest in providing effective and efficient services to the public; and (3) the speech was a substantial factor in the decision to terminate the employee. *McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998).

Matters of public concern protected by the First Amendment do not include "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest." *Stroman v. Colleton County School Dist.*, 981 F.2d 152, 156 (4th Cir. 1993).  Whether the speech relates to matters of public concern rests on "whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee." *Berger v. Battaglia*, 779 F.2d 992, 999 (4th Cir.1985) (internal quotation marks omitted).  Furthermore, whether speech fairly relates to a public concern or expresses a private grievance or a matter of immediate self-interest must be

determined by the content. In determining whether a retaliatory employment decision violates the First Amendment, the court must balance "the interests of the employee, as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting efficiency of the public services it performs through its employees." *See Connick v. Myers*, 461 U.S. 138, 140 (1983) (citations omitted).

The Fourth Circuit has set forth the following non-exhaustive list of factors to be considered in balancing the employee's interest in speaking on matters of public concern against the government's interest in providing effective and efficient public services: whether the employee's speech (1) impairs discipline by superiors; (2) impairs harmony among co-workers; (3) has a detrimental impact on close working relationships; (4) impedes the performance of the public employee's duties; (5) interferes with the operation of the agency; (6) undermines the mission of the agency; (7) is communicated to the public or to co-workers in private; (8) conflicts with the responsibilities of the employee within the agency; and (9) makes use of the authority and public accountability the employee's role entails. *McVey*,157 F.3d at 278. "[A] public employee, who has a confidential, policy-making, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employee." *Id*. at 277.

As argued by the defendants, most of the alleged actions by the defendants occurred after Dr. Ball notified the plaintiff of his intent to dismiss her. Further, she has not and cannot prove that the matters were of public concern, rather than "[p]ersonal grievances, complaints about conditions of employment, or expressions about the matters of personal interest" and that such constitutionally protected speech was a substantial factor in the decision to terminate her. Accordingly, the First Amendment claim fails.

***Due Process***

In her second cause of action, the plaintiff alleges that she was illegally suspended from her position as a tenured associate professor at Lander (am. comp. ¶¶ 9-14).  To the extent that the plaintiff claims that her suspension violated her state and federal constitutional right of due process, her claim fails.  As argued by the defendants, the issue is whether the plaintiff had a constitutionally protected property right as a tenured faculty member to continue exercising her academic duties pending the Faculty Grievance Committee's and the Board of Trustee's decisions on her appeal of her dismissal.  In *Royster v. Board of Trustees of Anderson County School Dist. No. 5*, 774 F.2d 618 (4th Cir. 1985), the Fourth Circuit Court of Appeals held that an educator's status as "tenured" does not entitle him, under the due process clause of the Fourteenth Amendment, "not only . . . to receive the compensation guaranteed [him], but also the right to actively engage in and execute the duties of his office."  *Id*. at 621.  In *Fields v. Durham*, 909 F.2d 94 (4th Cir. 1990), the Fourth Circuit court of Appeals stated:

> [W]e have previously held that the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services.  Rather, the property interest is more generally in continued employment, and no deprivation exists as long as the employee receives payment of the full compensation due under the contract.

*Id.* at 98 (citations omitted).  In this case, the plaintiff was paid through the term of her 2001-2002 faculty contract, and indeed through December 13, 2002, when the Board of Trustees voted to deny her appeal of Dr. Ball's decision to terminate her employment (pl. dep. 29).  Based upon the foregoing, the plaintiff's claim fails.

*Civil Conspiracy*

In her fifth cause of action, the plaintiff alleges a claim for civil conspiracy. She claims that defendants Jackson and Tannenbaum conspired to have students disrupt her political science class and to have her fired. The actions complained of by the plaintiff allegedly occurred between 1978 and 1993. The plaintiff contends that the claim is viable under Title 42, United States Code, Section 1985(3).[3] To prove a civil conspiracy under Section 1985(3), a plaintiff must show:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Hejirika v. Maryland Div. of Correction*, 264 F.Supp.2d 341, 347 (D. Md. 2003)(citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir.1995)). "It is 'well settled' that 'a claimant must show an agreement or a "meeting of the minds" by defendants to violate the

---

[3] The statute reads in pertinent part:
**Depriving persons of rights or privileges.** If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. §1985(3).

17

claimant's constitutional rights' in order to prove a § 1985(3) conspiracy." *Langadinos v. Appalachian School of Law*, No. 1:05CV00039, 2005 WL 2333460, *12 (W.D. Va. Sept. 25, 2005) (quoting *Simmons*, 47 F.3d at 1377 (citations omitted)). "The Fourth Circuit has 'specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.'" *Id.* (quoting *Simmons,* 47 F.3d at 1377). The plaintiff has not shown any evidence that the defendants were "motivated by a specific class-based, invidiously discriminatory animus," nor has she shown a "meeting of the minds" of the defendants. Clearly the plaintiff has failed to establish a *prima facie* case of civil conspiracy under Section 1985(3).

### *Other Statutes*

In her response to the motion for summary judgment, the plaintiff states for the first time that she is alleging a claim for whistleblowing under the anti-retaliation provision of the False Claims Act, 31 U.S.C. §3730(h). As argued by the defendants, her attempt to inject this new claim at this late date comes too late. *See Witt v. American Trucking Ass'ns, Inc.*, 860 F.Supp. 295, 304-306 (D.S.C. 1994). Further, the plaintiff cited the following statutes in her amended civil cover sheet, but did not mention them in her complaint: Titles I and VI of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Equal Pay Act. In another paper filed by the plaintiff, she mentioned Title IX of the Education Employment Amendments of 1972. The plaintiff has come forward with no evidence supporting any such claims and, therefore, even if the claims were considered properly pled, the claims fail.

*State Law Claims*

The court should decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims as it is recommended that summary judgment be granted on the federal claims. *See* 28 U.S.C. §1367(c).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted on the plaintiff's federal claims and that the court decline to exercise supplemental jurisdiction over the state law claims.

_____
WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

January 24, 2006

Greenville, South Carolina